**Andrew G. Patel**
Attorney-at-Law
The Trinity Building
111 Broadway, Suite 1305
New York, New York 10006
Fax: 212-346-4665                                                                    **Telephone: 212-349-0230**

**By Hand**

April 10, 2014

Honorable Edgardo Ramos
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

                              Re:    United States v. Rashawn Vassell
                                          12 Cr. 626 (ER)

Dear Judge Ramos:

     This letter is respectfully submitted in advance of the sentencing of Rashawn Vassell. On November 4, 2013, Rashawn Vassell entered a guilty plea to his participation in a Hobbs Act robbery of a drug spot in Newburgh, New York. During the robbery Jeffrey Henry was killed. At the time of the robbery, December 15, 2010, Rashawn was 18 years old and had lived in Newburgh his entire life. He is now 21 years old.

     Here is Rashawn Vassell's life in a nutshell: █████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
████████████████████████████████ For the next 16 years, Rashawn was subjected to consistent parental neglect and abuse and received essentially ███
█████████████████. Rashawn is now about to be sentenced for his participation in a tragic crime. Despite this history, Rashawn has maintained a lasting and positive relationship with Taria Gates, the mother of his 2 year old son, and aspires to be a good father. There is a reasonable basis to believe that Rashawn is capable of redemption and thus worthy of this Court's mercy.



---

[1]  The records reviewed by Dr. Rosenbaum and by Ericka Adams, the mitigation specialist, are voluminous and thus not supplied with this submission. On request, however, we would be pleased to provide the entire record or excerpts to your Honor or the Government.



████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████ Rashawn has the potential to become a productive member of society." (Exh. A at 15).

Social History Report

Ericka Adams, LMSW JD, is a mitigation specialist. She spent many hours talking with Rashawn, interviewing family members, collecting, reviewing and analyzing a small mountain of medical, educational, legal and psychological records. Ms. Adams' report is attached to this submission as Exhibit B.

████████████████████████████████████. Additionally, his mother intentionally burned him with a hot iron and failed to follow-up when professionals made ████████████████████ recommendations for his learning and ████.

Ms. Adams' report and the underlying records demonstrate that while Ms. Yolanda Fearon, Rashawn's mother, made feeble attempts ████████ for Rashawn – in that █████████████████████████████████████, she gave up. She did not follow through, and as a result Rashawn ████████ ██████████████████████. As Ms. Adams' report discusses, Ms. Fearon may have had issues of her own, but this does not excuse her failure to take responsibility for the

---

[3] ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████

welfare and well-being of her son. It also speaks volumes about the viability of the social safety net in Newburgh that none of the health care providers, social workers or public officials who interacted with Rashawn even noted much less acted on Rashawn's neglect and abuse.

Lead Poisoning

Lead in the blood interferes with the developing brain and causes intellectual and behavioral deficits in children. To date, no safe level of lead in the blood has been determined. Lead levels in the bloodstream of less than 10 μg dL are associated with changes in neurochemistry and behavior. [4] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ in his grandfather's house where he lived with his mother as an infant and young child.

PSR Comments

Adjustments to Incarceration (Page 3, ¶ 10)

Rashawn did not give money to another inmate as that term would ordinarily be understood to mean currency. Rashawn did allow another inmate to make an 11 minute telephone call using his PIN number.

Offense Conduct (Pages 4-5, ¶¶ 15-21)

Based on my review of the discovery produced and conversations with the Government, until very recently it was my understanding that Rashawn conduct was limited to participating in the robbery. During the course of the robbery, there was a struggle to open the door to the apartment. Shots were fired. The shots were not fired through the door, but rather were fired when the shooter (or shooters) reached through the partially opened door and blindly shot at the person who was attempting to hold the door closed. That person, Jeffrey Henry, was killed.

---

[4] *Sanders, Liu, Buchner and Tchounwou*, Neurotoxic Effects and Biomakers of Lead Exposure: A Review, Reviews of Environmental Health, Volume 24, page 16-45; Nov. 2009. A copy of this article is available on request.

Based on the available evidence, the Government agents, prosecutors and I all understood that Rashawn was not one of the shooters. Accordingly, Rashawn was offered and in December 2013 pled guilty to the robbery. Approximately two weeks ago, the Government told me that a cooperator had for the first time identified Rashawn as one of three shooters. As I understand the events, when this cooperator was initially interviewed, approximately two years ago, he named two people (not Rashawn) as the shooters. In a recent interview, however, the cooperator said that there had been three shooters, one of whom was Rashawn.

There are reasons to question the accuracy of the cooperator's recent revelation. To start with, the logistics defy reason. How do three people simultaneously, or even in quick succession, reach through a partially opened door in the midst of a struggle to open the door and all fire shots through the small opening between the door and the door-frame? Even assuming a logical explanation, the accuracy of the cooperator's recent recollection gives rise to concern. I am not suggesting that the cooperator is intentionally lying. I have represented enough cooperating clients to know that most cooperators want and try to be truthful. Truthfulness and accuracy are not, however, necessarily the same.

In any murder investigation, the identities of those most responsible – the shooters – are of paramount importance to law enforcement. There little reason to doubt the agents accurately recorded this cooperator's identification of the two shooters when they initially interviewed him. Nonetheless, as social scientists have established, human memory does not function like a tape recorder. Memory is both flexible and impressionable. In the intervening two years, this cooperator has almost certainly had several, if not many, conversations with Government agents and prosecutors about the events of that night. Again, I am not suggesting that any law enforcement agent or prosecutor attempted to sway this cooperator to change his story. The simple fact that this cooperator had numerous conversations about the events and the participants, including Rashawn, raises a very real possibility that the cooperator's memory has changed, not because of what he observed that night, but rather because he is a human being whose memory is not fixed and is subject to change over time.

Offense Level Computation (Pages 5-6, ¶¶ 25-35)

It is respectfully submitted that while the Probation Report correctly calculates the Sentencing Guidelines, the calculations are of little use in this case. They suffer

from two structural infirmities.

First, under Guideline section 2B3.1(c)(1), because of the homicide, the offense for the robbery – not taking into consideration credit for acceptance of responsibility – jumps from level 32 to level 43. Even after taking into account the three level reduction for acceptance of responsibility, the adjusted offense level is 40 with an advisory sentencing range that exceeds the statutory maximum.

The Guidelines fail to take into account the defendant's role in the robbery and ensuing homicide. Moreover, they do not make any distinction between a murder that was intentional, negligent, or as in this case, reckless. The Sentencing Guidelines simply fail to provide any meaningful guidance as to the appropriate sentence under the facts presented by this prosecution.

On the other hand, when the effects of the enhancement pursuant to §2B3.1(c)(1) are set aside, the numeric assignments provide a useful framework. As set forth on page two of the plea agreement the Guideline calculation is as follows:

| | |
|---|---|
| Base offense level [ U.S.S.G. § 2B3.1(a)] | Level 20 |
| A firearm was discharged [U.S.S.G. § 2B3.1(b)(2)(A)] | + 7 |
| Serious bodily injury to victim [U.S.S.G. § 2B3.1(b)(3)(B)] | + 4 |
| An object of the offense was the taking of a controlled substance [U.S.S.G. § 2B3.1(b)(6)] | + 1 |
| Acceptance of responsibility [ U.S.S.G. § 3E1.1(a) & (b)] | - 3 |
| **Adjusted Offense Level** | **Level 29** |

The plea agreement calculated that Rashawn Vassell's Criminal History Category was Category III. The Probation Report determined that he is in Criminal History Category IV. This issue is discussed below. Regardless, the Advisory Guideline Sentencing Range at level 29 is

        108-135 months    At Criminal History Category III

       121-151 months     At Criminal History Category IV

The second deficiency of the Sentencing Guidelines is the failure to account for Rashawn's psychological condition and the social backdrop of his life. In a recent article, the Honorable Jed S. Rakoff of this Court describes the intellectual impetus for the sentencing guidelines as having been a way to encourage judges to consider these very factors in making sentencing decisions, and he bemoans how far from that goal the "artificial numbering system" strayed. Jed S. Rakoff, *Why the Federal Sentencing Guidelines Should be Scrapped,* CRIMINAL JUSTICE, American Bar Association (Winter 2014). A copy of Judge Rakoff's article is attached as Exhibit C.

It is unfortunate that your Honor's starting point in determining an appropriate sentence for Rashawn Vassell must be Sentencing Guidelines that omit any consideration of the impact that his ▮▮▮▮▮▮▮▮▮▮▮ and his neglect and abuse had on Rashawn prior to the commission of the offense of conviction.

Criminal History Calculation (Pages 6-8)

The Probation Report correctly calculates that Rashawn is in Criminal History Category IV. What is remarkable is the explanation for the difference in the calculation between the plea agreement (CHC III) and the Probation Report (CHC IV).

Briefly, Rashawn was arrested for this offense on or about September 5, 2012, at the Orange County Jail where he was being held for a violation of Probation. On January 10, 2013, four months after he was detained on this federal case and after CJA counsel had been appointed, he was transported to appear in Orange County Court. On the advice of the Legal Aid Attorney covering the Part that day (who had no prior relationship to Rashawn) and without notice to or so much as an effort to telephone me first, Rashawn pled guilty to two violations of probation. He was promised a sentence of 16 months to 4 years on one case (that case is sealed because it was a juvenile matter) to run concurrent with a sentence of 18 to 54 months on the other violation of probation.

As a result of these two post-detention convictions, Rashawn received additional criminal history points. Accordingly, because of the negligence of that Legal Aid lawyer, he is now in Criminal History Category IV instead of Criminal History Category III.

Pursuant to the Bureau of Prisons regulations, Rashawn will not receive any credit for the approximately 17 months he has served since September 5, 2012. All of that time will be credited to the State sentences that were imposed without so much as a telephone call to his counsel on this matter. I have discussed this problem with legal counsel for the Bureau of Prisons. I have been advised that if your Honor makes the sentence on this case concurrent with the previously imposed State violations of Probation that Rashawn's federal sentence will begin to run on the date your Honor imposes sentence.

Offender Characteristics

It is respectfully submitted that the reports of Dr. Rosenbaum and Ms. Adams give your Honor a complete picture of Rashawn's background. As to this section of the Probation Report, there are two points that I believe appropriate to bring to your Honor's attention.

Officer Singleton, the author of the report, interviewed Rashawn's mother. ( *See* Page 10, ¶ 57.) Normally, when preparing a PSR, it is appropriate and diligent to talk to the defendant's mother. This is not a normal case. An abuser is not a good reference for the abused.



At Page 11, ¶ 66, the report states that Rashawn's mother " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." In that same paragraph the Probation Report states that " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." What the Probation Report does not say that when these events occurred, Rashawn was only 11 years old. An 11-year old does not bear the responsibility to "follow through with ▮▮▮▮." That is a parent's responsibility. The report does not recite that it was Ms. Fearon who failed to make sure that Rashawn ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

As is my usual practice, in anticipation of a sentencing proceeding, I reached out to my client's family and requested letters to be submitted to your Honor relevant to sentencing. Rashawn and Ms. Adams both asked his mother to write a letter to your Honor on Rashawn's behalf. Attached to this submission is absolutely nothing from Rashawn's mother.

Attached to this submission as Exhibit D is, however, a letter to your Honor from Rashawn. Given Rashawn's level of education, it is apparent from the form of the letter that Rashawn asked for and received help from a fellow inmate in preparing this letter. While the grammar and vocabulary may have been supplied by another, the facts and the aspirations are all Rashawn's. To the best of his ability, Rashawn found a way to express to your Honor his regret for his conduct and his hope for a better future. Given Rashawn's background, I respectfully ask your Honor to see this letter, initiated by Rashawn, for what it truly is – a reason for optimism.

Conclusion

Title 18 U.S.C. § 3553(a) directs your Honor to impose a sentence that is "sufficient but not greater than necessary" to accomplish the goals of sentencing that are listed in § 3553(a)(2). In addition to the advisory Sentencing Guidelines, your Honor is required to consider the defendant's background and the need for just punishment and the need to protect society from any future criminal conduct of the defendant.

Particularly relevant to the sentencing of Rashawn Vassell is the need for educational or vocational training, medical care, or other correctional treatment in the most effective manner. Accordingly, I ask your Honor to recommend to the Bureau of Prisons that Mr. Vassell be placed in a facility in the North East Region where he can be provided with medication and meaningful mental health therapy. In this sense the goals of sentencing as articulated by Congress are consistent with Dr. Rosenbaum's recommendations.

The ultimate question is how long a sentence is "sufficient but not greater than necessary to accomplish the goals of sentencing." Before the Orange County debacle, I had intended to ask your Honor to impose a sentence of 10 years. Such words do not come easily to me. This is a serious case where great harm was caused. But Rashawn Vassell is a young man who has been damaged by actions not of his own making. To reach an appropriate balance, I respectfully ask your Honor to impose a sentence of 108 months to run concurrent with the New York State sentence Rashawn is currently serving.

There is a rationale for this request. I started with 10 years (120 months), subtracted the 17 months attributable to his loss of credit for time served due to incompetent legal advice, and then added back five months in recognition of the separate and serious harm caused. Moreover, a sentence of 108 months (nine years) is within the

**Honorable Edgardo Ramos**
United States District Judge
April 10, 2014
Page 10

advisory Guideline sentencing range of Level 29 at Criminal History Category III.

    The effect of such a sentence is that it will give Rashawn time to receive the treatment he so clearly needs. It will also give him time to grow up. He will be almost 30 years old when he is released from custody – old enough to slow down a bit and yet young enough to build a new life for himself. A sentence of 108 months is both long enough to provide just punishment and to allow for sufficient time so that Rashawn will be able to integrate into his adult years the benefits of the therapy and education he will receive while incarcerated. There is no better way to assure the safety of the public. Thus, a sentence of 108 months is sufficient but not greater than necessary to heal Rashawn and to allow him an opportunity to realize his hope for a better life.

                               Respectfully submitted,

                               _____s/AGP_____
                               Andrew G. Patel


cc:    Andrew Bauer
        Assistant United States Attorney (by electronic mail w/attachments)