E4HFVASS                        Sentence

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                        12 CR 626 (ER)

5    RASHAWN VASSELL,

6                Defendant.

7    ------------------------------x

8                                        New York, N.Y.
                                         April 17, 2014
9                                        4:00 p.m.

10
     Before:
11
                          HON. EDGARDO RAMOS,
12
                                         District Judge
13

14                        APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     ANDREW BAUER
17        Assistant United States Attorney

18   ANDREW PATEL, ESQ.
          Attorney for Defendant
19

20

21

22

23

24

25

E4HFVASS                    Sentence

1          (Case called)

2          (In open court)

3          THE DEPUTY CLERK:  U.S. v. Rashawn Vassell.  Counsel,

4     please state your appearances for the record.

5          MR. BAUER:  Good afternoon, your Honor.  Andrew Bauer

6     for the government.

7          THE COURT:  Good afternoon, Mr. Bauer.

8          MR. PATEL:  Good afternoon, your Honor.  Andrew Patel

9     for defendant Rashawn Vassell.  With me at counsel table is

10    Ericka Adams, litigation specialist, who has been a spectacular

11    asset.

12         THE COURT:  Good afternoon to you both and good

13    afternoon to Mr. Vassell.  This matter is on for sentencing and

14    in preparation for today's proceeding I have reviewed the

15    presentence investigation report dated April 11, 2014 prepared

16    by us probation officer Keisha Singleton which includes a

17    recommendation.  I have also reviewed the sentencing memoranda

18    submitted by Mr. Patel dated April 10, 2014.  That submission

19    includes the report of a psychiatric evaluation conducted by

20    Dr. Karen Rosenbaum and a report prepared by Miss Adams, a

21    litigation specialist.  It also includes a letter submitted by

22    Mr. Vassell himself and an article authored by one of my

23    colleagues, Judge Rakoff.  I have reviewed a letter submitted

24    by Messrs. Bauer and Nawaday on behalf of the government dated

25    April 15, 2014 and, finally, I have reviewed the transcript of

1    the guilty plea allocution taken before Magistrate Judge

2    Francis on December 4, 2013.

3             Is there anything else I should have received or

4    reviewed?

5             MR. PATEL:  No, your Honor.

6             MR. BAUER:  Not from the government, your Honor.

7             THE COURT:  So first things first.  Any objection to

8    my accepting the recommendation of Magistrate Judge Francis

9    that I accept Mr. Vassell's guilty plea?

10            MR. PATEL:  No, your Honor.

11            MR. BAUER:  No, your Honor.

12            THE COURT:  In that event I have read the plea

13   allocution and I find it meets the requirements of Federal Rule

14   of Criminal Procedure 11 and I will accept the recommendation

15   of Magistrate Judge Francis and find Mr. Vassell guilty of

16   Count One of the superseding information.

17            Now let's turn to the PSR itself.  Mr. Patel, have you

18   read the presentence report and discussed it with your client?

19            MR. PATEL:  I have, your Honor.

20            THE COURT:  And, Mr. Vassell, have you received a copy

21   of the presentence report and discussed it with Mr. Patel?

22            MR. BAUER:  Yes.

23            THE COURT:  Gentlemen, are there any objections

24   regarding the factual accuracy of the report?

25            MR. PATEL:  No, your Honor.  The only objections,

1    they're more in the nature of comments.

2              THE COURT:  Okay.  Did you want to raise those now?

3              MR. PATEL:  Your Honor, they were included in our

4    letter.  I'm happy to go through it, but I assume your Honor

5    has read our letter.

6              THE COURT:  I have.  And you will be given a full

7    opportunity to comment including any comments on the PSR that

8    you have.  And you may remain seated, by the way, Mr. Patel.

9              MR. PATEL:  Thank you.

10             THE COURT:  Let's move to the guidelines calculation.

11   Although I am not required to impose sentence within the

12   sentencing range.  I'm sorry, Mr. Bauer.

13             MR. BAUER:  Sorry.  Your Honor, I just had one comment

14   on the PSR and that's the criminal history calculation.

15             THE COURT:  Yes, sir.

16             MR. BAUER:  Paragraph 45.

17             THE COURT:  Yes.

18             MR. BAUER:  It's a violation for unlawful possession

19   of marijuana.  I thought that that should count as one point

20   rather than zero point.  We didn't have that conviction in our

21   plea agreement.  I don't think that it was on his rap sheet at

22   the time, but I do believe that that should count as one point.

23   The probation department has excluded it under 4A1.2C,

24   presumably because it's a violation but I think that we

25   typically count that.  It's not going to change the calculation

E4HFVASS                          Sentence

1   for Mr. Vassell.  He'll still remain in criminal history

2   category III.

3              THE COURT:  IV.

4              MR. BAUER:  IV.  Excuse me, sorry.

5              THE COURT:  Mr. Patel, did you have a view?

6              MR. PATEL:  Your Honor, I think that probation -- I

7   think the view about this particular violation which under

8   state law is not a crime has been evolving and I would submit

9   that what Mr. Bauer said is historically accurate, that in the

10  past there has been a great deal of debate about how marijuana

11  violations should be considered, but I believe the probation

12  office is absolutely correct in not counting this violation,

13  which is not a crime, and under 4A1.2C now I think it's

14  correctly perceived as the kind of activity that is not counted

15  and should not be counted in the future.

16             THE COURT:  Okay.  Well, the parties have not brought

17  this to my attention in the past, rather, prior to this

18  afternoon.

19             (Pause)

20             MR. PATEL:  Your Honor, if I could give one example of

21  why I believe probation has got this right?

22             THE COURT:  All right.

23             MR. PATEL:  You have a situation, your Honor, where a

24  person could have no other criminal conduct but two violations,

25  non-criminal convictions, and then have two criminal history

1    points and are not safety-valve eligible and I believe that

2    this is a recognition of the way both the Commission and

3    certainly the attitude writ large about how things are going.

4    I don't dispute this is something of a change from the way

5    things were historically done, but I think this is a healthy

6    and appropriate analysis on the part of probation.

7         THE COURT:  As I read 4A1.2C, in which the sentence is

8    counted and excluded, it indicates that sentences for

9    misdemeanors and petty offenses are counted except as follows,

10   and there are sentences for the following prior offenses or

11   offenses similar to them by whatever name they are known are

12   counted only if A, the sentence was a term of probation of more

13   than one year or term of imprisonment of at least 30 days or B,

14   the prior offense was similar to an instant offense.  And then

15   it lists a number of offenses, including careless or reckless

16   driving, contempt of court, disorderly conduct, driving without

17   a license, false information to a police officer, gambling,

18   hindering or failing to obey a police officer, insufficient

19   funds, leaving the scene of an accident, non-support,

20   prostitution, resisting arrest and trespassing.  And then

21   there's a list of offenses that are never counted.  And,

22   Mr. Bauer, it appears that because the sentence here was a

23   conditional discharge that this would not appear to be a

24   sentence that should be counted.

25         MR. BAUER:  Why is that, your Honor?  I think there

E4HFVASS                    Sentence

are -- I think because it's a conditional discharge then it's

then -- then if it fell into one of the categories under 4A1.2C

then it would not be counted but I would suggest that unlawful

possession of marijuana doesn't fit into any of these

categories.  I think the closest would be under 4A1.2C2 where

it says local ordinance violations.  I think it pretty clearly

states except those violations that are also violations under

state criminal law and unlawful possession of marijuana is a

violation under New York State Penal Law.  So I think it

doesn't comport with any, to use the language of the guideline,

it's not directly any of the offenses that are enumerated in

the guideline nor is it similar to any of those enumerated and

therefore I think it should count.

              THE COURT:  Mr. Patel?

              MR. PATEL:  Your Honor, the term "violation" has two

meanings here.  One is violation in the sense of behavior that

is not condoned by statute, but violation is also a

denomination of some form of offense, and in New York State

this level of marijuana is deemed non-criminal as is disorderly

conduct, whereas driving without a license is in fact, although

it's excluded under the statutory list, is actually a

misdemeanor and therefore is a criminal conduct.  So

essentially what we have here is we're carving -- I think what

the government is essentially saying is, hey, this is drugs, so

it should count.  Those who passed this statute did everything

1    they possibly could this side of what they've done in

2    Washington and the State of Colorado to say this should not

3    impact this man's future.  And I think, your Honor, I would ask

4    your Honor to honor that intent.

5              THE COURT:  Well, I guess the bottom line is whatever

6    I decide at least under the guidelines it's not going to impact

7    this man's future.  Moreover, I can assure both parties that

8    whether I count the point or not, count it as a point or not

9    will not affect the sentence I will impose on Mr. Vassell and

10   because the government had not brought this to my attention

11   previously and because I believe Mr. Patel is right that the

12   probation department is not counting these types of offenses as

13   criminal history points, I am going to not count it and I'm

14   going to keep the criminal history category point total at 8.

15   Okay?

16             Anything else, Mr. Bauer?

17             MR. BAUER:  No.  Thank you, your Honor.

18             THE COURT:  Yes.  Getting back to the presentence

19   investigation report and the guideline calculation, although I

20   am not required to impose a sentence within the guideline

21   range, I am required to consider the guidelines and in order to

22   do that I needed to determine the applicable range.  As the

23   parties have advised me that there is no objection to the

24   guideline calculation contained in the presentence

25   investigation report I find as follows:  Mr. Vassell entered a

E4HFVASS                    Sentence

1    plea of guilty to Count One of the superseding indictment

2    charging him with Hobbs Act conspiracy in violation of 18,

3    United States Code, Section 1951.  The base offense level for

4    that offense is 45 because pursuant to Section 2B3.1C1 of the

5    guidelines that is the base offense level because a victim was

6    killed under circumstances that would constitute first degree

7    murder.  Because Mr. Vassell has accepted responsibility, three

8    levels are subtracted leaving a total offense level of 40.

9         The parties have also advised, and I find that there

10   is no dispute, that the defendant is in criminal history

11   category IV.  Based on the parties' representations that in

12   their view the guidelines and criminal history calculation in

13   the PSR are accurate and my independent evaluation I accept

14   both calculations in the presentence report, obviously subject

15   to, except for the government's objection, to the failure to

16   add the one point for the marijuana violation.

17        Accordingly, I find that the total offense level is

18   40, the criminal history category is IV, resulting in a

19   guidelines range of 360 months to life.  However, because the

20   statutory maximum for 18 U.S.C. 1951 is 20 years the effective

21   guidelines range is 240 months.

22        Mr. Bauer, did you wish to be heard before I impose

23   sentence?

24        MR. BAUER:  I do, your Honor.  My points that I wish

25   to make are largely already in my sentencing letter so I won't

E4HFVASS                    Sentence

reiterate them, at least not too much.  I guess what I want to

point out and discuss a little further is Mr. Vassell's role in

the robbery and the murder.  As you know, your Honor, this case

stems from the failed or botched robbery attempt at 54 Chambers

Street in Newburgh where seven individuals including

Mr. Vassell went to that house which they knew to be a drug

spot where they sold marijuana and crack cocaine.  Five of the

seven people had guns, Mr. Vassell one of them, and they

entered the premises.  One of the robber's gun was taken by the

victims and so that started a shootout which took obviously an

explosive situation anyway and made it that much worse.  When

the robbers -- when the shootout started the robbers tried to

leave the apartment building and that's when they encountered

Jeffrey Henry holding the door shut on the other side.  I know

that your Honor knows all of that.

          What the government had previously represented to both

you, your Honor, and also to the defendants both in our motion

practice and I think just us standing up here is that there

were two shooters who were taking turns opening the door and

kind of shooting around the door whenever the door was open to

try to get Jeffrey Henry to let go of the door, Glen Thomas and

Tyrell Whitaker.  Those are the two shooters we had named and

as I put in my letter that was based largely on our

interpretation of an FBI 302 report that was written, based on

speaking to a particular cooperator about the events of that

1   night.

2          As we were getting ready, as we are getting ready for

3   the trial of some of Mr. Vassell's codefendants we began to

4   debrief that cooperator again as we got ready for a trial and

5   again we asked him to tell us who the shooters were and what he

6   said was different than what was in that report.  What he said

7   was that as everybody was trying to get out of the apartment

8   building they were all lined up and it wasn't just Thomas and

9   Whitaker but there were at least three people doing the, taking

10  turns either opening the door or shooting around the door once

11  the door had been opened just a little bit, and that third

12  person was Rashawn Vassell.  I addressed in my letter how this

13  all came about, how our confusion came about.

14          I guess what I want to say here is that Mr. Vassell

15  has benefited from that confusion and what I mean by that is I

16  can fairly confidently say that if we knew then at the time of

17  Mr. Vassell's guilty plea what we know now we would not have

18  offered him a plea agreement to Count One which capped his

19  exposure at 240 months.  And that is borne out by the plea

20  negotiations that we've had with the other two individuals,

21  Mr. Thomas and Mr. Whitaker, who has not pled guilty because we

22  haven't offered such a deal to them or at least we haven't done

23  so yet.  We would have looked for a plea to the murder count,

24  to the 924(j) count.  The difference there would have been, the

25  guidelines would have been 360 to life.  You, your Honor, still

E4HFVASS                    Sentence

1    would have had discretion to sentence him below 360 and frankly

2    below 240.  But the starting point of the advisory guidelines

3    range would have been much higher here.

4            So I think I felt it was important for me to tell you

5    that, I think it's important for you to consider that not that

6    the government likes to do your job for you at sentencing,

7    Judge, but we gave Mr. Vassell a pretty favorable plea

8    agreement, both in terms of how I just explained his conduct

9    during the robbery and murder, but also generally.  Mr. Patel,

10   he earlier said that I was complimentary to him in my

11   sentencing submission but it's deserved in that he came in and

12   made a very strong pitch for his client to get the plea

13   agreement that we ultimately gave him.  And many of the

14   arguments that he made to us are the arguments that he made

15   before you in his sentencing submission.

16           So I would argue that our plea agreement or I would

17   submit to your Honor that our plea agreement already has built

18   into it a discount, so to speak, for those 3553(a) type

19   arguments.  I'm not trying to take your job away from you, your

20   Honor, but I'm just being candid with you about how the plea

21   negotiations worked in a case like this, and so I think that's

22   important for you.

23           At the end of the day, your Honor, the facts are what

24   they are.  Whether he was the shooter or not, he still brought

25   a gun into a robbery along with a number of other people that

1   it was obviously a strong possibility that violence was going

2   to ensue and that guns would be used.  So, I mean, the conduct

3   can't be any more serious.  Mr. Vassell's conduct can't be any

4   more serious and that in and of itself would warrant a

5   guidelines sentence here of 240 months.

6            I would also underscore one of the other points I made

7   in my letter which is that Mr. Vassell was caught with cocaine

8   after leaving this courtroom back on September 11, 2013.  I

9   keep saying this courtroom, it's this courthouse.  He came in

10  for a conference and then as he left the courthouse and

11  returned back to the prison they did a strip search and found

12  cocaine.  It's a small amount of cocaine, it obviously doesn't

13  rise to the level of murder, but I think it is reflective of

14  where Mr. Vassell is and in terms of his remorse or in terms of

15  how he intends to spend the remaining years of his life, and I

16  think the fact that he's caught with cocaine, smuggling it in

17  from the courthouse back into jail is obviously a factor that

18  your Honor should consider also and I would suggest also weighs

19  in favor of the guidelines sentence of 240 months.

20           THE COURT:  How does it happen that someone gets

21  access to cocaine during transport between this courthouse and

22  a prison?

23           MR. BAUER:  The only person that can really answer

24  that your Honor at this point is Mr. Vassell and I don't think

25  he's going to.  It's incredibly troubling.  I've spoken to the

marshals, spoke to Mr. Patel.  I've spoken to my superiors

about it.  It's obviously troubling.  I have my guesses as to

what happened but it's not -- I don't know.

THE COURT:  Okay.

MR. BAUER:  So, your Honor, in some I think 240 months

of imprisonment for an individual who was one of the shooters

who killed Jeffrey Henry and has caused such a profound loss in

obviously one family's life and in a community 240 months is a

reasonable and still very significant sentence for Mr. Vassell.

THE COURT:  Thank you, Mr. Bauer.  Mr. Patel?

MR. PATEL:  Thank you, your Honor.

Your Honor, the government has just asked you to

impose a sentence of 20 years based on, to paraphrase

Mr. Bauer, where Mr. Vassell is in his life.  Where he is in

his life is he's now, three years after this incident, 21 years

old.  So he is just old enough now to vote, to drink, to be an

adult in many jurisdictions.  He is an extraordinarily young

man, a young man who grew up in Newburgh.  I don't know how

familiar your Honor is with the City of Newburgh but based on

the fact that this case is going to go to trial, you're going

to learn a lot more than you know now.  So if the Court will

indulge me.

I learned a great deal about Newburgh.  In the 1880's

it was a thriving river trade.  The Erie Canal closed in 1894,

it was a disaster.  I believe approximately 80 percent of the

E4HFVASS                    Sentence

houses were built before 1970 which means that lead paint was
banned in 1978 so that one of the greatest single problems that
Mr. Vassell, where he is in his life, is struggling with an
infant blood level that was twice the amount that is known to
cause permanent damage.  That's where he is in his life.
That's a struggle he's going to have forever.  Just so your
Honor should know, he's not alone.  Approximately 40 percent of
the children in the Newburgh schools have that problem and
according to one report 100 percent of the kids in the special
education program have blood lead exposure.

         Your Honor has Dr. Rosenbaum's report and you're aware
of the issues, the psychiatric issues that that has caused.
This has actually affected the composition of his thinking.

         There is no dispute really, your Honor, that Newburgh
is as far from an ideal place to raise a child as is humanly
possible and the support for an infant and young child was de
minimis, and I'm being generous there.

         So that's where he is in his life, your Honor.  He is
still a very young man who is struggling with a permanent
injury and how he's going to be for the rest of his life I
think is not something that can or respectfully should be
judged based on what happened on a single night when he was 18.

         I understand Mr. Bauer's suggestion that Mr. Vassell
has benefited, to use his word, from the, shall we say the
change of factual circumstances, and I notice in his letter, to

E4HFVASS                    Sentence

1    use a colloquial expression, the government was rather quick to

2    throw an FBI agent under the bus, but I'm not exactly sure and

3    I'm sure it will be the subject of great examination exactly

4    how this change came to be.  And as I made, went to great

5    lengths in my letter to point out I do not for a nanosecond

6    think that there's been any misconduct here, but I do think

7    that the nature of the way the human memory works, people

8    perceive events, they honestly perceive events differently

9    after they've gone through a number of post event experiences.

10   I think the social science on that is really without question.

11   So as I said, I don't doubt that the government's cooperator

12   believes what he now reports but I also believe that any FBI

13   agent that ever went through FBI training and made it out and

14   became a Special Agent is going to accurately record who the

15   shooters were in a homicide.

16           As to the offense, this is part of my problem with the

17   2B1.1C issue in the guidelines where, murder is one of the

18   oldest crimes in the human experience and we have gradients of

19   homicide; first degree, second degree, manslaughter, criminally

20   negligent homicide.  None of those exist in the guidelines,

21   just go straight to the top.  Mr. Bauer suggested that this was

22   the most serious conduct possible.  I can assure your Honor

23   that the result to Mr. Henry would confirm what Mr. Bauer said.

24   But in terms of Mr. Vassell's conduct, which if everything the

25   government said is correct, we have a reckless homicide here,

1    not an intentional homicide.

2              THE COURT:  Why not?

3              MR. PATEL:  Because this is someone shooting blindly

4    around the door.  This is not someone picking up a gun,

5    pointing it as someone's head and blowing their brains out.

6    The effect might be the same but the intent is different.  You

7    know, the intent here was to escape, not to kill.

8              THE COURT:  But they weren't shooting blindly around

9    the door.  They were shooting at the person on the other side

10   of the door.

11             MR. PATEL:  They were shooting, they were trying to

12   get out.  They couldn't see.  They couldn't see.  They're

13   reaching through a crack in the door while they're struggling

14   to get out.  This was, I mean, they could have just as easily

15   have wounded him and accomplished their goal if he fell down.

16   This is not an intentional killing.  This is your classic

17   felony murder where someone died during an incident, but this

18   is not a case where someone intentionally took the life of

19   another human being.  And outside the area of the guidelines,

20   certainly in state criminal proceedings there is a difference

21   between an intentional murder and a reckless murder and I think

22   that's a fact that your Honor should consider.  The guidelines

23   prevent that, which is why I urge your Honor to adopt the

24   guideline calculation without the 2B3.1 erasure of the, at

25   least the communal understanding of broad criminal conduct or

E4HFVASS                        Sentence

1  at least as the Commission has felt.

2          THE COURT:  Mr. Patel, even if I were to accept your

3  view of the differences between types of murders and how they

4  should be considered here, doesn't the government's plea offer

5  or doesn't your agreement with the government sort of take that

6  into account by capping your exposure  at 20 years?  We're

7  talking first degree murder generally speaking.  We're talking

8  either about a death penalty or life imprisonment.  Under the

9  worst of circumstances Mr. Vassell is only looking at 20 years'

10  imprisonment, which again I'm not an expert on state law

11  sentencings, but that would appear to me be in keeping with a

12  reckless murder conviction.

13          MR. PATEL:  Actually, your Honor, the state penalty

14  for intentional murder would be 25 to life and I don't -- I'm

15  somewhat pleased to be able to say this -- it's been a long

16  time since I've been over at 100 Centre Street so I can't tell

17  you what the current state of affairs is there, even a plea to

18  an A1 felony which this kind of murder is would only be 15 to

19  life.  So this is even above what a plea offer would be on even

20  an intentional homicide.  But state court aside, to answer your

21  Honor's question, I think not.  Because remember, your Honor,

22  when the government made this offer they were essentially

23  punishing for someone who had -- they were having someone

24  accept responsibility for his participation in a robbery in

25  which someone did die.  And that's very different from someone

E4HFVASS                    Sentence

who perhaps negligently, recklessly, but certainly not

intentionally caused the death of another individual.

        THE COURT:  Why should I treat -- assuming that

Mr. Vassell didn't shoot at Mr. Henry, why should I treat him

so differently?  I mean, the situation that Mr. Vassell

associated himself with, voluntarily committed himself to was

so inherently dangerous that we're lucky that only one person

died as a result of this incident.

        MR. PATEL:  Then your Honor, to answer the question

that your Honor just asked, which I think is the keyword, is

because then you have to look at who he is and his ability to

really understand and process and understand not the criminal

culpability.  He understands that robbery is wrong, I'm not

suggesting that he's incompetent, but if you read

Dr. Rosenbaum's report, read Mr. Edwards' report and what is

really clear here we're dealing with a broken young man, a

really broken kid.  Do we send him to prison for a generation

for acts that arose -- his perception of things, his distorted

perception is a function of things that were not his fault.

Infants eat lead paint.  It's not a volitional act, you know.

Kids who eat lead paint are difficult to control and so they

don't necessarily get the therapy and the medication they

should.  So this is not someone who just voluntarily said I'm

going to be an idiot and go out and commit a robbery of some

kind.  We're dealing with damaged goods, and I think damaged

1  goods get a sentence that is sufficient but not necessary for

2  someone to by Court order get the medication to get the

3  treatment, to get education so that when they come out they're

4  better, they're better than when they went in.  They're older,

5  they're wiser and they can actually make going to prison to be

6  a positive thing in their life.  Mr. Vassell has already taken

7  the first step.  As damaged as he is and we know what his

8  limitations are, that still he's been taking GED classes.  He's

9  been trying.  I think we want to encourage that.  Because

10 here's the thing, Judge.  He's a very young man now.  He's

11 going to be a young man when he gets out and I like him to

12 think that it wasn't just thrown away, that there was a measure

13 taken of him.  He is what he is.  He's broken, let's try to fix

14 him.  We have that opportunity.

15         THE COURT:  Let me ask you, Mr. Patel, is he serving

16 one or two state sentences?

17         MR. PATEL:  He is serving, the answer to your Honor's

18 question, he's serving two concurrent state sentences.  One of

19 them is actually a juvenile conviction and the records are

20 sealed.  I actually spoke to his, the person who represented

21 him and I think that's about as generous a description as I can

22 come up with, and their records indicated that the sentences on

23 the two violations of probation were imposed concurrently with

24 each other.  But the answer is it is two sentences imposed

25 concurrently on the same day.

1          THE COURT:  Okay.

2          MR. PATEL:  Which brings me to one other point.  I

3     would ask your Honor to impose this sentence concurrent with

4     those sentences.  The effect of those sentences, as I mentioned

5     in my letter, is that whatever good time Mr. Vassell says under

6     Bureau of Prisons determination and they are the persons that

7     initially make that determination is all counted towards his

8     state sentence.  So he's actually completed the minimum of one

9     of his state court sentences and there is a detainer so he's

10    going to have to go back through the state system when he gets

11    out of federal custody unless New York changes their mind but

12    right now there hasn't been a change of mind.  I consulted with

13    Adam Johnson, lead counsel at the MCC who I'm sure your Honor

14    knows about what if anything can be done to correct and/or

15    minimize this, and Mr. Johnson informed me that if your Honor

16    makes the sentence concurrent that whereas under prior policy

17    his federal sentence would not have started until the

18    completion of his state sentence he will start getting credit

19    for his federal sentence as of today.  But the entire time he's

20    been in jail, almost a year and a half, that's gone.

21         THE COURT:  But if I make it concurrent, even though

22    the state, rather, the federal sentence begins today, he'll get

23    credit for the time that he served in the state?

24         MR. PATEL:  Your Honor, that's a good question and I'm

25    not a hundred percent sure.  Let me tell you, the Bureau of

E4HFVASS                        Sentence

1    Prisons will not give him credit, but I'm not at all certain

2    whether New York State Department of Corrections will give him

3    credit.  I anticipate somewhere down the road that there will

4    be some litigation in state court about that, although I'm sure

5    that there are regulations and eventually someone will figure

6    out that he did spend time in jail and I have some degree of

7    confidence that that will get straightened out.  But right now

8    the detainer that he has, I actually have a copy of it here,

9    says he has zero credit for time served in state court.  That's

10   a state document.  So right now a year and a half appears to

11   have vanished.  I'm somewhat confident that someone down the

12   road will see, will straighten this out.

13          THE COURT:  I'm sorry, Mr. Patel, I'm trying to figure

14   this out.  Are you telling me as of right now he gets no credit

15   for the federal sentence and no credit for the state sentence?

16          MR. PATEL:  To answer your Honor's question, right now

17   what I know is that he gets no federal credit.

18          THE COURT:  Okay.

19          MR. PATEL:  And what I have and I'm holding, it's a

20   letter, this is the actual detainer from State of New York and

21   it says, it's sort of addressed to the records department in

22   the MCC concerning Mr. Vassell and it includes both his federal

23   identification number and his New York State identification

24   number an it says, and I quote, "he has received jail time

25   credit of zero days," unquote.  Whether that will -- and this

E4HFVASS                        Sentence

letter is dated April 2, 2014.

      THE COURT:  Okay.  And, Mr. Bauer, is that your

understanding about his time as being calculated if you know?

      MR. BAUER:  I'm not sure that I have an understanding

one way or the other.  But what Mr. Patel is saying is

consistent with my understanding of how it works generally.

      THE COURT:  Very well.

      MR. BAUER:  Your Honor, just on the point of

concurrent versus consecutive.  I hear Mr. Patel making an

argument as to how it would work and why it would be good for

his client.  What I don't hear is any objection or reason why

you should sentence him concurrently.  I think's because I'm

not really sure there is one except that it will be less time

for him.  These are completely different sentences, I'm sorry,

completely different offenses and the sentence that he is

serving in the state, which, by the way, as Mr. Patel said, for

two sentences, there's a state interest in him serving time and

being punished for that, that is separate and apart from the

interests that you face here today.  So the government would

suggest that there is no basis except for the fact that I

believe you just have the discretion to do it if you want to

sentence him concurrently.

      THE COURT:  Okay.

      MR. PATEL:  Your Honor, I would respectfully and

actually I mean that, because I really respect Mr. Bauer,

E4HFVASS                    Sentence

disagree with that assessment.  There is a fundamental fairness

that everyone else who is represented in state court by

competent counsel, which he was not, that lawyers would have

brains to call me up and say, and I would have said wait until

the federal sentence has been imposed because all his good time

is going to go away and his criminal history is going to go up.

I've had that conversation with state attorneys many times.  I

didn't get a phone call this time.  It was just, he was just

processed like baloney through a factory and it's disgraceful.

And to add time to the amount of time that he spends in jail

because he received such horrible legal advice, I don't think

that's the right thing to do and your Honor has the ability to

avoid the consequences of his getting bad legal advice.

          THE COURT:  Okay.

          MR. PATEL:  Your Honor, the only other thing that I

would ask is that your Honor recommend that he be designated to

a facility in the northeast.  His mother, grandfather and

mother of his son are here today.  He has been maintaining a

relationship with these folks and that's a good thing.  I would

also ask your Honor to recommend, because I know that's all you

can do, that Mr. Vassell receive the mental health treatment

and medication that he so clearly deserves and that he receives

the opportunity to go to school and I'm sure there's a facility

in the northeast region that has the ability to provide those

services.  I would ask your Honor to consider making

E4HFVASS                        Sentence

Dr. Rosenbaum's report part of the presentence report.  Which

as your Honor knows the PSR is sort of the Bible in the BOP and

therefore they will have this information and her

recommendations and the reason for it, for those

recommendations.

         Other than that, your Honor, I think I've covered all

the territory that needs to be covered.

         THE COURT:  Mr. Bauer, did you have any view on the

recommendation that Dr. Rosenbaum's report be made a part of

the PSR?  I must say I'm not familiar with such a procedure.

         MR. BAUER:  Right.  I am not either, your Honor.  I

was trying to think if there was any reason why not, but I

think it would be more for his privacy interests than anything

else, but if he's the one who is asking for it then I have no

objection.  I don't know how it actually happens.  I think you

or Mr. Patel would have to get in touch with the probation

department and have it formally added like an amendment to the

report.

         MR. PATEL:  Your Honor, as your Honor could see on

page 11, paragraph 69, you provided a copy of Dr. Rosenbaum's

report to the probation department which is summarized and

referenced here so I think adding the reports so they actually

potentially hopefully treat people at the BOP, they could have

a head start.

         THE COURT:  And the PSR is treated as a confidential

E4HFVASS                          Sentence

1    document going forward as well.  So, okay.

2              MR. PATEL:  Thank you, your Honor.

3              THE COURT:  Mr. Vassell, you have an absolute right to

4    tell me anything you want before I impose sentence.  Is there

5    anything that you wish to say?

6              THE DEFENDANT:  Yes.  I just want to apologize to the

7    deceased's family and to my family and that's it, your Honor.

8    That's it.

9              THE COURT:  Thank you.  In deciding the sentence to

10   impose, in addition to the sentencing guidelines I have

11   considered all of the factors set forth in Section 3553(a) of

12   Title 18 of the United States Code, including the nature and

13   circumstances of this offense and the history and

14   characteristics of Mr. Vassell.  I considered the need of the

15   sentence imposed to reflect the seriousness of the offense, to

16   promote respect for the law, to provide a just punishment for

17   the offense,to afford adequate deterrence to criminal conduct,

18   to protect the public from further crimes of the defendant and

19   to provide the defendant with needed educational and vocational

20   training, medical care and other correctional treatment in the

21   most effective manner.  I've considered the policy statements

22   applicable under the guidelines.  I have considered the need to

23   avoid unwarranted sentence disparities among similarly situated

24   defendants and I have not considered restitution in that it's

25   not applicable in this case.

E4HFVASS                         Sentence

1        Having considered these factors, it is my intention to

2   impose a sentence of 223 months to be followed by three years

3   of supervised release and a $100 special assessment.  That

4   amount takes into consideration the 17 months that Mr. Vassell

5   has been held in federal custody while not getting credit.  I

6   will not impose a fine as I find that Mr. Vassell is not able

7   to pay a fine and there's no agreement concerning forfeiture,

8   is that correct, Mr. Bauer?

9        MR. BAUER:  Yes, your Honor.

10       THE COURT:  I believe that this sentence is sufficient

11  but not greater than necessary to comply with the purposes of

12  sentencing set forth in Section 3553(a) for the following

13  reasons:  This is obviously a very serious offense, as serious

14  an offense as any judge has to deal with in this courthouse.

15  Mr. Vassell, the crime that you and your co-conspirators

16  committed was so inherently dangerous that as I said earlier we

17  are lucky that only one life was lost, sad though that may be

18  to observe.  Several other young men could have very easily

19  lost their lives in those few murderous moments, including you.

20       I considered also that you are not a stranger to the

21  criminal justice system.  You have a formidable criminal

22  history and have been involved in the drug trade for many

23  years.  And effectively so.  And while I took very seriously

24  the reports that were submitted on your behalf by Dr. Rosenbaum

25  and Ms. Adams you were a functioning human being, as Mr. Patel

E4HFVASS                           Sentence

1    indicated, you were not incompetent, you were a functioning

2    adult but you functioned as a criminal and not just as a

3    criminal but as a violent criminal.

4          I know that the Town of Newburgh is a very difficult

5    town to live in.  However, I also know that there are hundreds,

6    if not thousands, if not tens of thousands of kids from those

7    very neighborhoods that you grew up in that do good or at least

8    are trying.  And their efforts are being made that much harder

9    by you, the actions you have taken.  So I take this very

10   seriously, and I think that this is a crime that deserves a

11   substantial period of incarceration, because at the end of the

12   day a man's life was taken and you played a significant role in

13   that man's life being taken.

14         In sentencing you, however, I am required to look at

15   the entire person; the good and the bad, and like I indicated,

16   I read very carefully the reports of Dr. Rosenbaum and

17   Ms. Adams and I greatly appreciate that you suffered under the

18   disability of untreated mental health issues and that you had

19   very precious few adults in your life who cared enough to take

20   the time to insure that your needs were met.  Clearly, a lot of

21   people failed you.  A lot of systems failed you.  And for that

22   obviously you deserve some measure of credit and I also take

23   Mr. Patel's words on your behalf very seriously.  I believe as

24   he does that you are not beyond redemption and I am hopeful

25   that because even when you serve this sentence you will still

1  be a very young man, that you take the time during your period

2  of incarceration to begin to make the changes that you appear

3  to understand are necessary in order for you to be a productive

4  member of society and a father to your son when you are

5  released from prison.  Hopefully you have turned your back on

6  the person who even while incarcerated was somehow had

7  sufficient resources and wherewithal to obtain cocaine at some

8  point while being transported from this room to the place where

9  you were incarcerated.  Hopefully the person that Mr. Patel

10  described to me just a few moments ago is no more and that you

11  will take this time and use it wisely.

12          Does counsel know of any legal reason other than what

13  has already been argued why the sentence should not be imposed

14  as stated?

15          MR. BAUER:  No, your Honor.

16          MR. PATEL:  No, your Honor.  May I inquire as to this

17  sentence being concurrent?

18          THE COURT:  This sentence is to be served concurrently

19  with the terms of incarceration he is currently serving.

20          MR. PATEL:  Thank you.

21          THE COURT:  It is the judgment of this Court,

22  Mr. Vassell, that you be committed to the custody of the Bureau

23  of Prisons for 223 months to be served concurrently with the

24  terms of incarceration that you are currently serving.  That

25  will be followed by three years of supervised release.  The

E4HFVASS                      Sentence

standard conditions of supervised release 1 through 13 shall

apply.  In addition, the following special and mandatory

conditions will apply:  The special conditions will be that the

defendant will participate in a program approved by the United

States probation office which program may include testing to

determine whether the defendant has reverted to using drugs or

alcohol.  The Court authorizes the release of available drug

treatment evaluations and reports to the substance abuse

treatment provider as approved by the probation office.  The

defendant will be required to contribute to the cost of

services rendered in an amount determined by the probation

officer based on ability to pay or availability of third party

payment.  The defendant shall participate in a mental health

program approved by the U.S. Probation Office.  The defendant

shall continue to take any prescribed medications unless

otherwise instructed by the health care provider.  The

defendant shall contribute to the cost of services rendered and

not covered by third party payment, if the defendant has the

ability to pay.

        The Court authorizes the release of available

psychiatric and psychological evaluations and reports to the

health care provider.  The defendant is to report to the

nearest probation office within 72 hours of release from

custody.

        The following mandatory conditions shall apply:  The

E4HFVASS                      Sentence

defendant shall not commit another federal, state or local

crime.  The defendant shall not illegally possess a controlled

substance.  The defendant shall not possess a firearm or

destructive device.  Mandatory drug testing condition is

suspended due to the imposition of the special condition

requiring drug treatment and testing.  The defendant shall

cooperate in the collection of DNA as directed by the probation

officer.

        You are ordered to pay a mandatory special assessment

of $100 on the count of conviction which shall be due

immediately.  As I indicated previously, I will not impose a

fine.  I will also make the following recommendations as

requested by Mr. Patel:  I will recommend that you be

designated to a facility in the northeast region and in

addition to the drug treatment program that also that you be

provided with mental health treatment and be designated to a

location in the northeast region where you can be provided with

educational services.  I will as well attach a copy of

Dr. Rosenbaum's report to the PSR.

        Mr. Bauer, are there any open counts or open

indictments?

        MR. BAUER:  Open counts and I guess the underlying

indictment as well.  The government would move to dismiss those

charges now.

        THE COURT:  That application is granted.  That

E4HFVASS                        Sentence

1   constitutes the sentence of the Court.  I take it that there

2   was a waiver of appeal in the plea agreement with Mr. Vassell,

3   Mr. Bauer?

4            MR. BAUER:  That's correct, your Honor.

5            MR. PATEL:  That's correct, your Honor.

6            THE COURT:  And I further take it that because of the

7   sentence that I imposed that Mr. Vassell's appellate rights are

8   severely restricted in that event.

9            MR. PATEL:  That's correct, your Honor.

10            THE COURT:  Notwithstanding that, Mr. Patel, will you

11   assure me that you will promptly and thoroughly discuss with

12   Mr. Vassell the effect of the appeal waiver in his plea

13   agreement?

14            MR. PATEL:  I have actually already done that.

15            THE COURT:  Thank you, Mr. Patel.  Is there anything

16   further?

17            MR. PATEL:  Yes, your Honor.  I have submitted to your

18   Honor a CJA form to obtain the minutes of this proceeding.

19   Normally your Honor I would ask that for designation purposes,

20   it makes Mr. Vassell's life easier.  This time your Honor I'm

21   asking because based on experience very often my clients when

22   they're in court all they can really hear is their own

23   heartbeat but I think it would be good for Mr. Vassell to study

24   what your Honor said at a quieter time.

25            THE COURT:  I have that form, Mr. Patel, and I'm

E4HFVASS                    Sentence

1   signing it now.

2           MR. PATEL:  Thank you very much.

3           MR. BAUER:  Your Honor, before we go may I just

4   clarify the aspect of your sentence where you sentenced him to

5   223 months to account for the 17 months that he was in federal

6   custody and that he did not get credit for?

7           THE COURT:  Yes.

8           MR. BAUER:  When you sentenced him concurrently, I

9   didn't hear Mr. Patel saying, and if I agreed before I

10  certainly didn't mean to, that he wasn't going to get state

11  credit for these 17 months, and I believe that he will have

12  gotten credit under his state sentence for these past 17 months

13  and so it's my understanding that if you were to sentence

14  him -- let's hold off.

15          (Pause)

16          MR. BAUER:  Your Honor, my concern -- I'm sorry, I

17  will put on the record Mr. Patel showed me a letter from the

18  state Corrections Authority that says that he hasn't gotten any

19  credit for his state time.  That makes no sense to me.  I am

20  sorry if I didn't pick up on this when he was saying it

21  earlier, but what I was agreeing to earlier was he wouldn't be

22  getting credit for the federal time.  But I'm concerned -- I'm

23  concerned, I think that this sentence might be a windfall of 17

24  months for Mr. Vassell once he's corrected that he will get

25  state time credit for those 17 months and once you issue the

E4HFVASS                          Sentence

1   concurrent sentence then the BOP will then trace it back to

2   those 17 months as well.

3              THE COURT:  Well, he's going to be doing 223 months

4   beginning now, correct?

5              MR. PATEL:  Correct.

6              THE COURT:  He's been in custody for 17 months,

7   correct?

8              MR. BAUER:  He's been in custody for 17 months.

9              THE COURT:  So the total that he will receive on this

10  federal sentence will be 20 years and it is my view that he

11  need not do a day more than 20 years.

12             MR. BAUER:  So that was my clarification.  That the

13  223 months starts today, you're not intending it to date back

14  the 17 months.

15             THE COURT:  Correct.  Correct.

16             MR. BAUER:  All right.  That was a big hullaballoo

17  just for that clarification.

18             THE COURT:  Quite all right.  Anything further?

19             MR. PATEL:  No, your Honor.

20             THE COURT:  Mr. Patel, I must put on the record that

21  as always your submission on behalf of Mr. Vassell and your

22  other clients has been extraordinarily helpful to your clients,

23  I believe.

24             MR. PATEL:  Thank you, your Honor.

25             (Adjourned)