UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                    Plaintiff,

        – against –

RASHAWN VASSELL,

                    Defendant.

**OPINION & ORDER**

12 Cr. 626 (ER)

RAMOS, D.J.:

Rashawn Vassell is currently serving a sentence of 223 months' imprisonment at Beaumont United States Penitentiary ("USP") in Texas. Before the Court is his *pro se* motion for a sentence reduction and compassionate release. The Government opposes this motion. For the reasons set forth below, the motion is DENIED.

I.    BACKGROUND

According to his pre-sentence investigation report ("PSR"), on December 15, 2010, Vassell and several other individuals, armed with firearms, agreed to rob Jeffrey Henry at his apartment in Newburgh, New York ("the Property"). PSR ¶¶ 16–18. At the time, Henry was known by others to sell crack cocaine and marijuana. *Id.* ¶ 16. When the group arrived at the Property, a gunfight ensued, and Henry was fatally shot. *Id.* ¶¶ 18–19. On August 12, 2013, a grand jury in the Southern District of New York indicted Vassell and five other co-defendants on charges of (1) conspiring to commit an armed robbery in violation of 18 U.S.C. § 1951, (2) committing and attempting to commit an armed robbery in violation of 18 U.S.C. § 1951, (3) conspiring to distribute crack cocaine and marijuana in violation of 21 U.S.C. § 846, (4) using a firearm in the course of the crimes charged in Counts One and Two in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii)–(iii), and (5) using a firearm that caused the death of Jeffrey Henry in violation of 18 U.S.C. § 924(j)(1). *See* Doc. 70. Vassel pled guilty to Count One of the

indictment on December 4, 2013, and the Court granted the Government's motion to dismiss the remaining counts. *See* Doc. 96; Doc. 118 at 31:20-25. In his plea allocation, Vassell stated that on the night of December 15, 2010, he agreed to rob the Property and that in connection to the robbery, Henry was killed. Doc. 96 at 11–14. The resulting Sentencing Guidelines range was 360 months to life imprisonment; however, the effective Guidelines range was 240 months because 18 U.S.C. § 1951, the offense charged in Count One, carries a twenty-year statutory maximum sentence. Doc. 118 at 9:17–21.

On April 17, 2014, with consideration for the 17 months Vassel had already spent in federal custody, Vassell was sentenced by this Court to 223 months' imprisonment, which was set to run concurrently with two state sentences he was serving. Doc. 118 at 27:1–5, 29:21–24. The Court noted that the crime was "a very serious offense" and was "so inherently dangerous that . . . we are lucky that only one life was lost." *Id.* at 27:13–19. Further, this Court noted that Vassell had a significant criminal history. *Id*. at 27:21–22.[1] Vassell did not file a direct appeal. However, Vassell has since filed numerous motions to decrease or release him from his sentence. Docs. 290, 408, 419, 484, 546. This includes a previous motion for compassionate release, Doc. 419, which the Court denied on September 9, 2020, Doc. 431.

On February 11, 2026, Vassell filed a second motion for compassionate release, citing the deaths of his father and grandmother, as well as relief based on a change in the Federal Sentencing Guidelines. Doc. 601 at 1–2. Specifically, Vassell states that his father passed from kidney failure in August 2012, prior to the indictment in this case. *Id* at 2; Doc. 604 at 1. Vassell further states he would have given his kidney to his father had he known of his father's illness. Doc. 601 at 2. Vassell then claims he has suffered "stress, depression, and anxiety problems" because of his father's death. *Id*. at 2. He also states that he requested and was denied mental health treatment while imprisoned at USP

---

[1] Vassell had prior state convictions including for burglary in the third degree and grand larceny in the fourth degree. PSR ¶¶ 38–46.

Beaumont, where he is currently housed, as well as at USP Canaan and USP Big Sandy, where he was previously housed. Doc. 604 at 3. Additionally, he states that he spoke to a psychologist at Victorville-USP about these conditions. Doc. 601 at 2. Further, Vassell states that he lost his grandmother in November of 2025, who was housed at a nursing home in New York, and says he would have been a caregiver for her if he was not in prison. *Id.*; Doc. 604 at 1–2. He also claims he filed a request to care for his grandmother to the warden while at USP Big Sandy. Doc. 604 at 1–2.

Finally, Vassell requests relief based on a "change of 'law'" that he claims has the effect of decreasing the number of criminal history points he was given prior to sentencing and, consequently, reduces his sentence. Doc. 601 at 1; Doc. 604 at 1. Though Vassell does not cite what specific "change of 'law'" he refers to, presumably Vassell is referring either to Amendments 821 or 829 of the Federal Sentencing Guidelines. *Id.*

## II.    LEGAL STANDARD

A court may not normally "modify a term of imprisonment once it has been imposed," but there are certain limited exceptions, including compassionate release. *United States v. Roberts*, 612 F. Supp. 3d 351, 353 (S.D.N.Y. 2020) (quoting *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)). A court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur: either the Bureau of Prisons ("BOP") Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once a petition for compassionate release is properly brought before a court, its discretion is guided by the policy statement in U.S. Sentencing Guidelines § 1B1.13. *See*

*id.* As relevant here, the Guidelines place three conditions on a determination of early release:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a)(1)(A), (a)(2)–(3).

The Guidelines include as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition" or "a serious functional or cognitive impairment." *Id.* § 1B1.13(b)(1)(B)(i)–(ii). The Guidelines further include as an "extraordinary and compelling reason" for compassionate release certain family circumstances of the defendant. *Id.* § 1B1.13(b)(3). These circumstances include, *inter alia*, the death or incapacitation of the caregiver of the defendant's minor child or adult child who cannot care for themselves, the incapacitation of the defendant's spouse, registered partner, or parent where the defendant is the only available caregiver, or the incapacitation of another immediate family member in a similar circumstance where the defendant is the only available caregiver. *Id.* § 1B1.13(b)(3)(A)–(D).

When determining whether a prisoner is a danger to the community, 18 U.S.C. § 3142(g) lists the following factors to be considered:

> (1) the nature and circumstances of the offense charged . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(2) additionally allows a court, after considering the § 3553(a) factors, to reduce the sentence of "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The relevant policy statement, however, provides that a sentence reduction is not authorized if an amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). Additionally, the policy statement notes, "the court shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Id.* § 1B1.10(b)(1). The relevant amendment covered in subsection (d), Amendment 821, went into effect on November 1, 2023, and applies retroactively. *Id.* § 1B1.10(d).

Finally, when litigants are proceeding *pro se*, their submissions to the Court are construed liberally. *United States v. Romero*, No. 22 Cr. 3213, 2025 WL 1732987, at *1 n.1 (2d Cir. Jun. 23, 2025). As such, Vassell's motions will be analyzed with reference to the strongest arguments they raise.

## III. DISCUSSION

Vassell requests a sentence reduction based on a change in the sentencing range for his offense, and a motion for compassionate release based on the deaths of his father

and his grandmother.[2]  Doc. 601 at 2.  The Government does not address the motion for sentence reduction, but the Government opposes the compassionate release motion because Vassell did not exhaust the administrative remedies available to him and has not shown extraordinary and compelling reasons for a reduced sentence.  Doc. 603 at 5–6.  The Court agrees with both arguments.

Before a court may reduce a defendant's sentence, 18 U.S.C. § 3582(c)(1)(A) requires either the BOP Director to make a motion to the court to release the prisoner or the prisoner make a motion to the court only after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  There is nothing in the record to suggest that the BOP has filed a motion requesting a reduction in Vassell's sentence.[3]  *See* Doc. 601; Doc. 604 at 4.  Moreover, the BOP reports that "it is unaware of [Vassell] seeking the requested relief through the administrative process."  Doc. 603 at 5.  Vassell's motion can be denied on this basis alone.  *United States v. Scparta*, 567 F. Supp. 3d 416, 421 (S.D.N.Y. 2020) ("Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies."); *United States v. Schultz*, 454 F. Supp. 3d 217, 218 (W.D.N.Y. 2020) (denying a defendant's motion for

---

[2]  Vassell also requests an attorney be appointed for him.  Doc. 601 at 2; Doc. 604 at 4.  That request is denied because, as set forth below, his motion for compassionate release will not be successful and "[g]enerally, a defendant has no right to the assistance of counsel in filing a motion for compassionate release. . . .  [I]t is within the district court's discretion whether to appoint counsel.  In exercising that discretion, a district court may consider whether the defendant's compassionate release motion would likely be successful."  *United States v. Feliz*, No. 16 Cr. 809 (VM), 2023 WL 8275897, at *2 (S.D.N.Y. Nov. 30, 2023) (citation modified).

[3]  Vassell claims in his reply to the Government's letter in opposition that he filed a motion for compassionate release with the warden at Big Sandy USP in October 2025.  Doc. 604 at 1, 4.  He states that being transferred to Beaumont USP in November, the "facility being on lockdown," and not having access to the library or commissary "slowed the process up."  *Id*.  However, Vassell does not provide a copy or other evidence of this alleged filing with the BOP.  *See* Doc. 604; *United States v. O'Bryant*, No. 16 Cr. 0317-3 (PAE), 2023 WL 8447995, at *5 (S.D.N.Y. Dec. 6, 2023) (denying a compassionate release motion because the defendant "ha[d] not provided any evidentiary support for his claim to have filed a request for compassionate release with the BOP on the ground he now pursues[, a]nd the BOP has not found a record of any such request").

compassionate release without prejudice because he failed to satisfy the "mandatory exhaustion provisions" of 18 U.S.C. § 3582(c)(1)(A)).

Even if Vassell met this procedural requirement, he has not shown why his motion should be granted on the merits.  Vassell initially raises an argument for a motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2) by arguing that a "change of 'law'" has the effect of reducing his criminal history points and sentence.  Doc. 601 at 1; Doc 604 at 1.  Vassell does not specify the change of law he is referring to, but he asserts that "due to the change of 'law' . . . if a [f]ederal prisoner has a 'non-violent' . . . youth offender conviction, and received criminal history points, then those points must be deleted and . . . his guidelines must change."  Doc. 601 at 1.

To be eligible for a sentence reduction resulting from a change in law in the form of an amendment to the Sentencing Guidelines, the amendment must be listed as retroactive in § 1B1.10(d) and applicable to the defendant's circumstances.  *See* U.S.S.G. § 1B1.10(a).  The Court is not aware of any such retroactive change applicable to Vassell in the Sentencing Guidelines.  It is unclear which change Vassell refers to in his motion, but insofar as Vassell means to rely on the November 2024 Amendment 829—which amended U.S.S.G. § 5H1.1 to provide that "a downward departure . . . may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses"—that amendment does not authorize a sentence reduction because it is not listed in § 1B1.10(d) and it is not retroactive.  *United States v. Hoti*, No. 15 Cr. 651 (LTS-1), 2026 WL 670175, at *2 (S.D.N.Y. Mar. 10, 2026); *see also United States v. Diaz*, No. 07 Cr. 387 (CM), 2025 WL 3206742, at *2 (S.D.N.Y. Apr. 3, 2025).  In any event, Amendment 829 was superseded by Amendment 836, which deleted the age-related downward departure policy statement of § 5H1.1.  *Hoti*, 2025 WL 670175, at *2 n.3; *United States v. Cummings*, No. 12 Cr. 31 (VM), 2025 WL 3239812, at *2 (S.D.N.Y. Nov. 20, 2025).  Thus, Vassell's sentence cannot be reduced based on Amendment 829.

If Vassell means to refer to Amendment 821, as he did in his previous motion for sentence reduction in January 2024, Doc. 546 at 1–2, this argument lacks merit. Amendment 821, which does apply retroactively, makes some changes to the status points given to defendants pursuant to § 4A1.1 and § 4C1.1. Specifically, Amendment 821 limits the criminal history points for offenses committed while under a "criminal justice sentence" and decreases the offense level for "zero-point offenders" who have no prior criminal history and meet certain criteria. Neither circumstance is applicable to Vassell. For one, the Court has already concluded in its September 2024 Order that "Vassell is not eligible for the status point recalculation [pursuant to Amendment 821] because he did not receive an enhancement for committing this offense while under a criminal justice sentence." Doc. 571 at 1–2. Additionally, Vassell is not eligible for a sentence reduction as a "zero-point offender" because Vassell has a prior criminal history, and the offense for which he is imprisoned resulted in the death of another. *See* Amendment 821, Part B; U.S.S.G. § 4C1.1(a)(1), (a)(4). Finally, with respect to Vassell's youthful offense argument, Amendment 821 did not change any aspect of § 4A1.1(b), which applies two criminal history points for certain prior juvenile sentences.[4] Thus, Amendment 821 provides no basis to reduce Vassell's sentence based on the criminal history points calculation. There is no change in law applicable to Vassell that warrants a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2).

Additionally, Vassell has not presented "extraordinary and compelling" reasons to warrant a reduction in his sentence as required by 18 U.S.C. § 3582(c)(1)(A)(i). Vassell

---

[4] Specifically, a "juvenile sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted only if confinement resulting from such sentence extended into the five-year period preceding the defendant's commencement of the instant offense." U.S.S.G. § 4A1.1, Application Note 2; *see also id.* § 4A1.2(d)(2)(A) ("[A]dd 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense"). This offense is counted because Vassell was placed with the Office of Children and Family Services for twelve months on January 16, 2007, PSR ¶ 36, and committed the instant offense in December of 2010, PSR ¶¶ 2–6, which is within the five-year period given in § 4A1.1, Application Note 2 and § 4A1.2(d)(2)(A).

states that his father's death in 2012 caused him "stress, depression, and anxiety" and that he would have given his father his kidney if he had knowledge of his father's kidney disease.  Doc. 601 at 2.  He also states that he requested and was denied mental health treatment while imprisoned at USP Beaumont.  Doc. 604 at 2.

While the Court is sympathetic to Vassell's loss, the "stress, depression, and anxiety" he suffered as a result of his father's death does not implicate the Sentencing Commission's policy statement in § 1B1.13.  Instead, the Sentencing Commission suggests that terminal illnesses, serious physical or medical conditions, serious functional or cognitive impairments, or deteriorating physical or mental health effects because of aging fall under "extraordinary and compelling" medical reasons to reduce a sentence.  U.S.S.G. § 1B1.13(b)(1).  Additionally, courts have held that "depression and anxiety . . . do not constitute extraordinary and compelling circumstances." *United States v. Silva*, No. 01 Cr. 1110 (LAP), 2024 WL 5155524, at *5 (S.D.N.Y. Dec. 18, 2024).  Further, "anxiety disorder does not generally rise to the level of an extraordinary and compelling circumstance, as medical issues must be 'extremely serious, if not life-threatening,' to meet this high bar." *United States v. Gomez*, No. 18 Cr. 214 (NGG), 2025 WL 1400066, at *3 (E.D.N.Y. May 14, 2025) (quoting *United States v. Fragoso*, No. 18 Cr. 179 (JMA), 2021 WL 5205633, at *3 (E.D.N.Y. Nov. 9, 2021)).  Thus, Vassell does not present "extraordinary and compelling" medical reasons consistent with the Sentencing Commission's policy statement for a reduction of his sentence.

Vassell alternatively requests compassionate release because of the death of his grandmother, Mary Fearon, who passed away in November 2025.  Doc. 601 at 2; Doc. 604 at 1.  He briefly claims he would have been her primary caregiver had he been able to do so, and he states he filed a request to care for his grandmother with the warden while at USP Big Sandy.  Doc. 601 at 2; Doc. 604 at 1–2.

Section 1B1.13(3) provides for relief from a sentence if certain family circumstances are applicable to the defendant.  Specifically, if the defendant is the only

available caregiver for, *inter alia*, a parent or another immediate family member, there may be extraordinary and compelling reasons to reduce the defendant's sentence. U.S.S.G. § 1B1.13(b)(3).  Vassell has not shown that he was the *only* available caregiver to his grandmother prior to her passing, and, due to her unfortunate passing, the caregiver provision is no longer applicable to Vassell.  While the Court is sympathetic to the emotional impact of the death of a family member, "the death of a family member, on its own, is not an extraordinary and compelling reason for sentence reduction."  *United States v. Waring*, No. 17 Cr. 50 (RMB), 2022 WL 2236334, at *4 (S.D.N.Y. Jun. 22, 2022); *see also United States v. Padilla*, 18 Cr. 454-6 (KPF), 2021 WL 242463, at *3 (S.D.N.Y. Jan. 25, 2021).  Thus, under these circumstances, Vassell has not shown any extraordinary and compelling reason or combination of reasons for a sentence reduction. *See United States v. Corbett*, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) (explaining that circumstances may "singly or in combination . . . qualify" as "extraordinary and compelling").

Finally, even if there were "extraordinary and compelling reasons" present in Vassell's circumstances pursuant to § 1B1.13 of the Sentencing Guidelines, the original sentencing factors set forth in 18 U.S.C. § 3553(a) must weigh in favor of a sentence reduction.  The § 3353(a) factors most relevant here are the nature and circumstances of the offense, seriousness of the offense, deterrence of criminal conduct, and protection of the public from future crimes the defendant may commit.  18 U.S.C. § 3553(a).  As set forth in the September 2020 Order denying Vassell's previous motion for compassionate release, the Court again finds that the § 3553(a) factors weigh *against* granting compassionate release.  Doc. 431 at 8–9.  Vassell, armed with a gun, was involved in a violent attempted robbery that resulted in the death of Mr. Henry, which this Court has previously noted was "as serious an offense as any judge has to deal with in this courthouse."  *Id.* at 8.  Additionally, Vassell's previous criminal history shows a potential

10

danger to the public if his sentence is reduced. *Id*. at 8–9. Thus, the factors listed in § 3553 weigh against a reduction in his sentence.[5]

## IV.    CONCLUSION

For the aforementioned reasons, Vassell's motion for compassionate release is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 601.

It is SO ORDERED.

Dated:    April 16, 2026
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

---

[5] Although the Court considered Vassell's disciplinary record while incarcerated significant in its 2020 Order, Doc. 431 at 8–9, the Court does not find that record relevant here because, as far as the Court is aware, the last documented altercation took place in 2019, *id.* at 4.